UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DANCO BUILDERS, et al.,<br><br>Defendants. | Case No. 15-cv-03945-WHO<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 47 |

## INTRODUCTION

A tenant's disposal of a cigarette on the balcony of an apartment caused significant damage to an apartment complex. The complex's insurer, Philadelphia Indemnity Insurance Company, paid the claim and now brings an action in subrogation against defendants Danco Builders for negligence and Schmidbauer Building Supply for strict product liability for their respective roles in installing or distributing the allegedly defective decking. Schmidbauer argues in its motion to dismiss that Philadelphia is not entitled to seek subrogation and has not adequately stated a claim for strict product liability. I disagree, and because argument will not be helpful I VACATE the hearing on March 23, 2016 and DENY Schmidbauer's motion.

## BACKGROUND

In 2006, Danco entered into a contract with Willow Creek Family Associates ("Willow Creek"), the owner of the apartment complex in question, to serve as general contractor, furnish all labor, and purchase building materials for the construction of the complex. Third Amended Complaint ("TAC"). ¶ 11 [Dkt. No. 43]. Willow Creek hired an architect to provide plans, including specified building materials for Danco to use in the construction. *Id*. ¶ 12. Instead of

purchasing the materials that the architect specified, Danco installed "wood plastic composite decking" purchased from Schmidbauer. *Id.* ¶¶ 13, 14. On December 16, 2013, a fire broke out when a tenant disposed of a cigarette on the balcony of apartment 524, Building F. Rather than self-extinguishing, the cigarette started a fire that ignited the decking, engulfed the second level of apartment 524, Building F, and spread to other portions of the building. *Id.* ¶ 16.

Philadelphia insured Willow Creek against "among other risks, any loss or damage to the property under certain circumstances." *Id.* ¶ 9. Willow Creek tendered its claim for the resulting losses and damages from the fire to Philadelphia. *Id.* ¶ 17. Pursuant to the insurance policy, Philadelphia reimbursed Willow Creek $669,052.19, and "thereby became subrogated to all of the insured's rights … against defendants as to the repairs for the spread of the fire." *Id.* ¶ 21. Philadelphia seeks to recover $649,052.19 for repairs from the spread of the fire from defendants Danco and Schmidbauer.

**LEGAL STANDARD**

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## DISCUSSION

Schmidbauer argues Philadelphia has failed to adequately plead both subrogation and strict product liability. Neither argument has merit.

### I. SUBROGATION

"Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim." *Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 65 Cal. App. 4th 1279, 1291 (1998). "In the insurance context, subrogation takes the form of an insurer's right to be put in the position of the insured for a loss that the insurer has both insured and paid. When an insurance company pays out a claim on a property insurance policy, the insurance company is subrogated to the rights of its insured against any wrongdoer who is liable to the insured for the insured's damages." *State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.*, 143 Cal. App. 4th 1098, 1106 (2006) (internal quotation marks and citations omitted).

There are eight elements to the right of subrogation:

> [1] the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; [2] the claimed loss was one for which the insurer was not primarily liable; [3] the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; [4] the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; [5] the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; [6] the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; [7] justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and [8] the

3

> insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Interstate Fire & Cas. Ins. Co. v. Cleveland Wrecking Co.*, 182 Cal. App. 4th 23, 33-34 (2010) (internal quotation marks and citations omitted)

Schmidbauer claims the TAC is devoid of facts to support elements three and seven. It contends that Philadelphia has failed to plead sufficient facts "demonstrating that SCHMIDBAUER is primarily liable for the loss, and that justice requires the entirety of the loss to be shifted to SCHMIDBAUER and DANCO." Mot. at 8 [Dkt. No. 47]. But while the TAC is sparse, when read as a whole it contains sufficient facts to plausibly support subrogation liability.

"As the elements demonstrate, the aim of equitable subrogation is to shift a loss for which the insurer has compensated its insured to one who caused the loss, or who is legally responsible for the loss caused by another and whose equitable position is inferior to the insurer's." *State Farm Gen. Ins. Co.*, 143 Cal. App. 4th at 1112. An insurer generally can recover from both the direct and indirect causes of the loss. *Id*. at 1112-13. Indirect causes may include "third parties whose conduct contributed to or permitted the loss." *Id*. at 1113. These "third parties may be involved in the circumstances surrounding the loss, with greater or lesser degrees of responsibility." *Id*.

In short, Schmidbauer need not be the direct cause of the fire to be liable to Philadelphia under a theory of subrogation. By bringing this lawsuit against Danco and Schmidbauer, Philadelphia is attempting to seek recovery from them to the extent their roles as third parties in distributing and installing the "highly combustible" decking materials contributed to or permitted the spread of the fire. TAC ¶ 25.

*State Farm General Insurance Co. v. Wells Fargo Bank, N.A.*, 143 Cal. App. 4th 1098 (2006), is instructive. In *State Farm*, the premises of an insured sustained damage from a fire that started in an adjacent apartment complex when a tenant placed fireplace ashes in a trashcan. 143

Cal. App. 4th at 1103. The insurance company sued the neighboring apartment building's owner, property managers, and refuse company for negligently failing to provide for the safe disposal of ashes. *Id*. Respondents in *State Farm*, like Schmidbauer here, argued that they maintained superior equity because they were not the "primary cause of the fire (i.e. they did not start it)." *Id*. at 1117. The court did not find that persuasive. "The mere fact that respondents did not start the fire does not automatically mean that they have a superior equitable position over [insurer]." *Id*. at 1118. Because the failure to provide for safe disposal of ashes could have arguably promoted the spread of the fire, the court held that the respondents were in a better position than the insurer or the insured to prevent the loss. *Id*.

This analysis is applicable here. As alleged, the procured decking was "defective," "unsafe for its intended use" and Schmidbauer "knew, or should have known, that DECKING [sic] would be used without inspection." TAC ¶¶ 32, 33, 38. Although a Willow Creek tenant is likely the direct cause of the fire, "the issue is whether respondents were in a better position to avoid the loss than [Philadelphia] or its insureds." *State Farm Gen. Ins. Co*., 143 Cal. App. 4th at 1118. If the allegations of the defective nature of the decking are accepted as true, Philadelphia was not in a better position to avoid the loss than Schmidbauer. As long as Philadelphia has a plausible claim for relief, preventing it from pursuing its claim simply because neither defendant started the fire would be inequitable. *See Id*. at 1119 ("It seems inequitable to bar State Farm from pursuing its claim against respondents solely because they did not place the ignition source in the trash can.").

## II. STRICT PRODUCT LIABILITY

Strict product liability can be based on design defect, manufacturing defect, or warning defect. *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 347 (2012) (internal quotation marks and citations omitted). Although Schmidbauer contends Philadelphia has failed to plead a claim under any of the three theories, I find Philadelphia has sufficiently stated a claim for strict product liability under a design defect theory of liability.

Pursuant to California law, a design defect may be established under either of two alternative tests: (1) the consumer expectation test or (2) the risk-benefit test. *See Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 432 (1978). Under the consumer expectation test, "a product may be found defective in design if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Id.* Alternatively, under the risk-benefit test, a product may be found "defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design." *Id*. "In a products liability case, a plaintiff has met his burden if he establishes that there was a defect in the manufacture or design of the product and that such defect was a proximate cause of the injury." *Dimond v. Caterpillar Tractor Co.*, 65 Cal. App. 3d 173, 177 (Ct. App. 1976).

Drawing all reasonable inferences in favor of Philadelphia, I find it has satisfactorily alleged a claim for strict product liability under the consumer expectation test. The complaint explains that the decking failed to perform safely as an ordinary consumer would expect when it ignited after the disposal of a cigarette. *See* TAC ¶¶ 39, 16 ("The DECKING was being used in a manner foreseeable by SCHMIDBAUER," when "a tenant at the WILLOW CREEK disposed of a cigarette on the balcony " and "[r]ather than self-extinguishing, the fire ignited the DECKING."). Given that Willow Creek is a residential apartment complex, it is reasonably foreseeable that the materials used to construct the decking might be exposed to improperly disposed-of cigarettes. *See Cronin v. J.B.E. Olson Corp.*, 8 Cal. 3d 121, 126 (1972) ("The design and manufacture of products should not be carried out in an industrial vacuum but with recognition of the realities of their everyday use.") (internal citations omitted); *see also Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 560 (1994) ("Because traffic accidents are foreseeable, vehicle manufacturers must consider collision safety when they design and build their products."). Although not specifically alleged, it

can be reasonably inferred that the product's alleged defect, namely the "highly combustible" nature of the decking, proximately caused the spread of the fire. *See* TAC ¶ 16 ("On December 16, 2013, a tenant at the WILLOW CREEK disposed of a cigarette on the balcony of apartment 524, Building F. Rather than self-extinguishing, the fire ignited the DECKING and engulfed the second level of apartment 524, Building F, and spread to other portions of the building, damaging it.").

Although Philadelphia's claims are thin, they are not, as Schmidbauer argues, "impermissibly threadbare." Mot. at 2. Schmidbauer has adequate notice of Philadelphia's theory of liability. The TAC plausibly states a claim against Schmidbauer.

**CONCLUSION**

For the aforementioned reasons, Schmidbauer's motion to dismiss is DENIED. It shall answer the TAC within 10 days of the date of this Order.

**IT IS SO ORDERED**.

Dated: March 22, 2016

WILLIAM H. ORRICK
United States District Judge