UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DANCO BUILDERS, et al.,<br><br>Defendants. | Case No. 15-cv-03945-WHO<br><br>ORDER DENYING MOTION FOR LEAVE TO AMEND<br><br>Re: Dkt. No. 71 |

## INTRODUCTION

Philadelphia Indemnity Insurance Company ("Philadelphia") seeks leave to file a Fourth Amended Complaint to assert a new factual theory of negligence against defendant Danco Builders ("Danco"). However, granting leave would require the reopening of fact discovery, a potential extension of the deadlines to file motions, and a continuance of the pretrial and trial dates. This prejudice, to both Danco and the case schedule, combined with Philadelphia's lack of diligence in seeking to raise its new "draft stop theory" leads me to DENY the motion for leave.

## BACKGROUND

This is a subrogation case involving property damage of the Willow Creek Apartments, in Willow Creek, California, as the result of a fire on December 16, 2013. Oppo. at 1 (Dkt. No. 74). Philadelphia filed this case on August 28, 2015, alleging that Danco Builders, ("Danco") was negligent in performing fire-related repairs and construction following a prior fire at the Willow Creek Apartments in 2008. Dkt. No. 1. Specifically, Philadelphia alleged that Danco was negligent by installing decking materials that did not comply with the California Building Code. *Id.* Philadelphia then filed three separate amended complaints on October 21, 2015, (Dkt. No. 16), December 8, 2015, (Dkt. No. 28), and February 2, 2016, (Dkt. No. 43): in each, Philadelphia alleged that Danco was negligent by installing highly flammable decking that failed to comply

with the California Code and caused the fire at the Willow Creek Apartments to spread. Philadelphia did not allege any other factual theory of negligence.

At the request of the parties, I have repeatedly extended the case scheduling deadlines to continue the fact discovery cut-off, initial expert disclosures and the expert discovery cut-off, the dates to schedule dispositive motions, and the pre-trial conference and date of trial in this case. Currently the expert discovery deadline is January 6, 2017; the deadline to file dispositive motions is February 15, 2017; the hearing date on dispositive motions is April 12, 2017; pretrial conference is set for May 1, 2017; and a bench trial is set for June 5, 2017. Dkt. No. 60; Dkt. No. 68; Dkt. No. 73. The fact discovery cutoff was August 1, 2016.

Philadelphia sought leave to file a Fourth Amended Complaint on November 9, 2016, to allege a new factual theory that Danco was negligent because it "installed or allowed second floor balcony decking, siding, moisture barrier, and attic draft stops to be installed at WILLOW CREEK. Said construction was not in compliance with the plans and specifications nor good and safe building practice, and was negligent." Cole Declaration, Ex. A ¶ 19 (Dkt. No. 71-1). This new allegation asserts that Danco was negligent in failing to install barriers in the attic and that the lack of these "draft stops" caused the fire at Willow Creek to spread.

Danco objects because (i) Philadelphia has had access to information related to this new attic draft stop theory since before the case was filed, (ii) Philadelphia never mentioned this theory either in its complaints or in its interrogatory responses, (iii) amendment would require Danco to conduct additional fact discovery and depositions of the subcontractors responsible for the attic installation, (iv) Danco would possibly need to bring those subcontractors into the case as parties, and (v) these delays and additional expenses will prejudice Danco. Oppo. at 6.

Philadelphia responds that it only discovered the draft stop theory through the discovery process by conducting depositions of Fire Captain Hicks and Danco's expert Cuzzillo. Reply at 4. It also argues that Danco should have been aware of, and conducted discovery in anticipation of the draft stop theory because Philadelphia's expert witness, Pelton, testified that the absence of fire barriers contributed to the fire, and because Captain Hick's report, from early 2014, also mentioned problems with the attic's construction. *Id.* at 5. It contends that because these sources

have long been available to Danco, Danco should have already investigated the draft stop theory and could not possibly be prejudiced by an amendment to the complaint now. *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, it "is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F. 2d 1385, 1387 (9th Cir. 1990). Courts generally weigh the following factors to determine whether leave should be granted: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013). A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously been granted leave to amend. *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003), *overruled on other grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007).

A lack of diligence may warrant denying leave under Rule 15. "Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

## DISCUSSION

Understanding that leave to amend should be freely given, amendment is not appropriate here because Philadelphia knew, or should have known, of the draft stop theory of negligence prior to filing this case. Amendment now will cause prejudice to Danco.

### I. UNDUE DELAY

Philadelphia argues that it only became aware of the draft stop theory through the discovery process, and especially, through Danco's deposition of Captain Hicks in June, 2016 and the expert report of Danco's expert Cuzzillo, dated September 21, 2016. Reply at 4. While I credit its counsel's representation that he was not conscious of the theory sooner, the information related to it has been available to Philadelphia for years.

3

At the deposition on June 4, 2016, Hicks testified that the lack of fire barriers in the attic contributed to the spread of the fire.  Steele Decl., Ex. K 104:10-16.  He based this on the conclusions and opinions outlined in his original report on the fire from early 2014, more than a year and a half before Philadelphia filed suit.  And while Cuzzillo, Danco's expert, references the attic issue in his report of September 21, 2016, his sources on the issue were known to or available to Philadelphia long the report was disclosed.  Cuzzillo cites Hicks' report from early 2014 and the testimony of Larry Pelton, Philadelphia's expert, who visited and examined the fire site in December 2013.  Oppo. at 5.

Philadelphia implicitly concedes that information on the draft stop theory has long been available when it argues that Danco would not be prejudiced by amendment now: "Plaintiff assumed that since Capt. Hicks' opinion was that the fire spread due to lack of draft stops that Danco would investigate all possible explanations for the fire spread.  Plaintiffs' expert witness, Larry Pelton did, as acknowledged by Defendant and explored during his percipient witness deposition."  Reply at 5.

Philadelphia cannot have it both ways – either the information about the draft stop theory was only learned through discovery or it has long been available to both parties.  Pelton, Philadelphia's expert, investigated this precise issue only weeks after the fire in 2013.  The information was available to Philadelphia more than a year before it filed suit against Danco in August, 2015, let alone before Hicks' deposition in June, 2016, and Cuzzillo's report in September, 2016.

Philadelphia has not offered any plausible explanation why it failed to plead these issues in its original complaint or in any of its three prior amended complaints.  It has not been diligent, raising the draft stop theory more than a year and a half after filing this case and more than two and a half years after evidence of it was available.  *See Parker v. Joe Lujan Enters. Inc.*, 848 F.2d 118, 121 (9th Cir. 1988) (finding undue delay where motion for leave to amend to add new theory of liability was filed two and a half years after accident giving rise to claims and proposed amendment).

4

## II. PREJUDICE

Danco contends that further amendment at this stage of litigation will prejudice it because it will need to reopen fact discovery to conduct additional depositions of the subcontractors in charge of building the attic at the Willow Creek Apartments and have its expert witnesses prepare additional reports that address and respond to Philadelphia's new draft stop theory. Oppo. at 2. I agree. The prejudice of needing to conduct additional discovery and prepare for new legal or factual theories is often grounds to deny leave to amend. *Jackson*, 902 F.2d at 1387 (denying leave to amend where defendant would be required to conduct additional discovery to respond to "different legal theories [that] require proof of different facts").

Philadelphia responds that Danco is not prejudiced because (1) it will not need to conduct additional discovery; (2) it should have already conducted additional discovery; and (3) even if it does need to conduct additional discovery, this is not sufficient to cause it prejudice. None of these arguments is convincing.

Philadelphia suggests that Danco need not depose the subcontractors who built the attic, stating that "What the subcontractors hired by DANCO performed . . . on the subject building is not relevant. What is relevant is the building plans and what DANCO hired the drywall contractor to do was actually performed on this particular building, by examination of the fire damaged building." Reply at 4. It does not explain this assertion; it is hard to imagine why what the subcontractors actually built in the attic is not relevant to Danco's defense under Philadelphia's new theory. Philadelphia asserts that Danco was negligent because it did not build the attic according to the plans and in compliance with good building practices. What the subcontractors actually built in the attic, what they were hired to build, and how they were supervised, for example, would all be relevant to Philadelphia's claims and Danco's defenses. Danco would not be able to discover this information by referencing the plans and the fire aftermath alone.

Philadelphia's assertion that Danco is not prejudiced because it should have investigated every possible cause of the fire is similarly unpersuasive. It is a plaintiff's burden to give defendants fair notice of the claims at issue and the underlying factual basis for those claims. Fed. R. Civ. P. 8(a)(2). A defendant is not required to conduct discovery and prepare defenses to

5

respond to factual theories and claims that have not been raised.  Danco had no obligation to prepare a defense for a possible, but unalleged, draft stop theory.

Finally, Philadelphia's notion that Danco will not be prejudiced if it has to conduct additional discovery is meritless.  Philadelphia admits that "the need for a party to conduct supplemental discovery or to consider a new line of legal argument are classic sources of prejudice that have regularly proven sufficient to defeat a motion for leave to amend." *IXYS Corp. v. Advanced Power Tech.*, No. 02-cv-03942-MHP, 2004 WL 135861, at *3 (N.D. Cal. Jan. 22, 2004); *see also Hash v. Lee*, No. 08-cv-3729-MMC, 2013 WL 4487536, at *2 (N.D. Cal. Aug. 19, 2013) ("If the requested leave were granted, defendants would be required to respond to a new set of claims, likely entailing considerable additional discovery, and all after completing plaintiff's deposition and preparing a dispositive motion.").  Without authority, it argues that "expense and delay are not enough by themselves to deny leave to amend.  There must be some showing of inability to respond to the proposed amendment." Reply at 2.  This assertion, made without support, is in direct conflict with the sources that Philadelphia cites explaining that the need to conduct additional discovery and prepare new legal arguments are "classic sources of prejudice that have regularly proven sufficient to defeat a motion for leave to amend." *IXYS*, 2004 WL 135861 at *3.

Danco would be unduly prejudiced if amendment were granted.  It would be required to conduct significant additional discovery of the draft stop theory, prepare new expert reports, and prepare new legal defenses.

The Ninth Circuit recognizes that "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Asso. Of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).  Here, Philadelphia did not seek leave to amend until October, 2016 based on facts that it knew, or reasonably should have known, in December, 2013 or early 2014.  Reopening fact discovery would prejudice defendants and unduly delay resolution of this case.  *Acri*, 781 F.2d at 1398-1399 (district court did not abuse its discretion in denying leave to amend under Rule 15 where it "was brought to avoid the possibility

of an adverse summary judgment ruling, and that allowing amendment would prejudice the Union because of the necessity for further discovery."). Philadelphia has presented no plausible explanation for its delay in raising the draft stop theory and amendment at this stage would prejudice Danco and cause further delays.

## CONCLUSION

For the reasons outlined above, Philadelphia's motion for leave to amend is DENIED.

**IT IS SO ORDERED**.

Dated: January 3, 2017



WILLIAM H. ORRICK
United States District Judge