United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    Plaintiff,

    v.

DANCO BUILDERS, et al.,

    Defendants.

Case No. 15-cv-03945-WHO

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I held a bench trial on June 5 and 6, 2017 on plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia")'s equitable subrogation claim against Dan Johnson Construction, Inc. dba Danco Builders ("DANCO") arising out of a fire that occurred on the balcony of Apartment F at the Willow Creek Apartments, in Willow Creek, California, in December of 2013. Philadelphia asserted that DANCO, the general contractor that built the Willow Creek Apartments, negligently installed a highly flammable Green Deck material on the balconies of the apartments and that the Green Deck on the balcony of Apartment F caused the fire to spread, substantially increasing the property damage resulting from the fire. DANCO denies liability. Philadelphia, the insurer, paid approximately $664,000 for fire damage repair costs and lost rent following the fire. In this order I issue my findings of fact and conclusions of law, determining that Philadelphia is not entitled to equitable subrogation against DANCO.

**I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    **A.    Undisputed Facts**

On May 1, 2006, DANCO and Willow Creek Family Partnership executed a construction contract for DANCO to act as general contractor for the construction of an apartment project near Willow Creek, California (the "Willow Creek Apartments"). UF 1, 7. The contract price of

construction was around $3.6 million. UF 7, 45. The International Fire Code's Wildland Urban Interface Code ("WUI") was not adopted by Humboldt County at the time the Willow Creek Apartments were planned and constructed. UF 33.

Eric Roberts dba Pacific West Architecture was hired as the architect for the Willow Creek project and drafted the architectural plans. UF 4-5. Per the plans, the apartment complex was to consist of four buildings, each with six units. UF 46. Each building was to have two second-story units, each with a deck around 100 square feet. UF 47. It was DANCO's general standard practice to follow a project's plans and specifications in completing a project. UF 8.

The plans for the Willow Creek Apartments had a conflict in that they called for both UltraGuard PVC and a two-inch lightweight concrete to be used for the second-story decks. UF 12-13, 50. DANCO did not issue a written request for information to the architect or structural engineer to clear up this conflict, UF 27, and there is no evidence that DANCO and the structural engineer discussed what decking material to use for the second floor balconies. UF 10.

On September 25, 2006, the Humboldt County Building Inspection Department approved using Procell PVC deck boards for the decking material on the second floor balconies at Willow Creek. UF 14. DANCO never sent UltraGuard PVC specifications or installation instructions to the building department for approval. UF 28. There is no evidence that DANCO submitted a written change order, signed by the owner, architect, or Department of Agriculture, regarding the material to use for second floor decking. UF 9, 31. The only change order signed by the architect in the DANCO job file related to additional fire sprinklers in the bathroom and no documents were removed from the DANCO job file prior to production in this litigation. UF 11.

In building the Willow Creek Apartments, DANCO performed some work itself and subcontracted other work out. UF 3. In 2007, DANCO installed, or gave one of its subcontractors approval to install, polyethylene deck boards ("Green Deck") on the second-floor balconies instead of the Procell PVC (approved by Humboldt County) or the UltraGuard PVC or light-weight concrete (specified in the plans). UF 15, 52. The manufacturer and origin of the Green Deck is unknown. UF 30. Green Deck was installed on all the second floor balconies at the Willow Creek Apartments. UF 29.

On June 26, 2008, there was a fire on the second-floor balcony of Apartment F at the Willow Creek Apartments. UF 16, 55. The fire was caused by a lit cigarette, which caught fire to materials on the Green Deck and burned the vinyl siding of the balcony wall. UF 18-19, 53. It was first suppressed by a passerby with a water hose. UF 20. An alarm for the fire went off at approximately 11:10 p.m. and the fire department arrived about eight minutes after the alarm. UF 17. The fire department quickly contained the fire and there were no injuries. UF 54. The fire caused $13,009.92 in damage, primarily to the vinyl siding, which DANCO repaired. UF 21. There was no significant damage to the Green Deck. UF 54.

A second fire occurred on the second-floor balcony of Apartment F on December 16, 2013. UF 22. This fire was also caused by a lit cigarette. UF 25. The tenant in Apartment F negligently discarded a lit cigarette in an ashtray and dumped the ashtray into a paper bag that contained combustible debris on the deck. UF 25. The fire was first reported by a driver on Highway 96, approximately 400 yards away from the Willow Creek Apartments around 11:59 a.m. UF 26, 56. The fire department arrived at 12:07 p.m., eight minutes later. UF 56. Only 3-4% of the Green Deck burned through during the 2013 fire, concentrated in the northwest corner of the deck. UF 57.

DANCO bid on and was awarded the contract to repair the damage from the 2013 fire. UF 35. It made repairs of like kind and quality to the damaged portions of the building. UF 34. Plaintiff Philadelphia is a corporation authorized to conduct insurance business in California. UF 38. It insured the Willow Creek Apartments at the time of the 2013 fire. UF 39. Philadelphia paid $581,500.00 for fire repair costs. UF 40. In addition to being the general contractor of the Willow Creek Apartments, DANCO was the property manager of the buildings at the time of the fire. UF 42. It calculated the lost rent and provided its lost rent figures to Philadelphia's adjuster for consideration. UF 43-44. Philadelphia paid $82,552.49 for lost rent due to fire damage. UF 41.

**B.     Additional Findings of Fact**

**a.** The 2013 fire burned for approximately 12-17 minutes before the fire department arrived. Trial Tr. Vol. I 225:22-25.

3

**b.** The paper bag full of combustible materials was placed on top of a cardboard box that was sitting on top of the Green Deck. Trial Tr. Vol. 1 224:20-225:11 (Cuzzillo Testimony).

**c.** The cardboard box was adjacent to or within a few inches of the North Wall of the balcony in the northwest corner of the deck. Trial Tr. Vol. 1 231:8-232:14 (Cuzzillo Testimony).

**d.** The fire spread up the wall creating a u-pattern, penetrated the soffit ceiling above the North Wall, and went into the attic. Trial Tr. Vol. I 223:22-224:4. (Cuzzillo Testimony).

**e.** Virtually all of the North Wall burned in the fire. Trial Exhibit 270.

**f.** Fire spreads more easily on a vertical surface than a horizontal one because flame is buoyant and rises, heating the fuel ahead of it as it spreads on a vertical plane. Trial Tr. Vol. I 241:19-242:13. (Cuzzillo Testimony).

**g.** The Green Deck was tested and found to have a Flame Spread Index of 150, which was a Class C fire rating. Trial Tr. Vol. II 306 :1-307:19 (Kelley Testimony); Trial Exhibit 237.

**h.** There was minimal damage to the northern wall of Apartment C below Apartment F, indicating that the hole in the northwest corner of the deck formed late in the fire because, if flaming debris had fallen through the hole, it would have ignited the vinyl wall below or the wooden sewing table on the Apartment C balcony. Trial Tr. Vol. I 234:22-235:20 (Cuzzillo Testimony); Trial Exhibit 264.

**i.** The minimal damage to Apartment C also indicates that the hole may have been enlarged by the firefighters during the overhaul stage of the fire suppression activity, after the fire was contained. Trial Tr. Vol. 1 232:15-233:16 (Cuzzillo Testimony); Trial Exhibit 269.

**j.** In addition to the large hole in the northwest corner of the deck, there was a "long slice" of damage to the deck directly next to the North Wall. Trial Tr. Vol. I 177:25-178:7 (Babrauskas Testimony). This damage was caused by burning melting vinyl siding and other building materials sliding down the wall and falling onto the deck. Trial Tr. Vol. I 178:3-7 (Babrauskas Testimony).

**k.** The fire spread from the flaming cardboard box directly to the North Wall causing the wall to ignite. Trial Tr. Vol. I 223:14-25 (Cuzzillo Testimony).

**l.** The large hole in the deck, like the "long slice," was caused by the burning vinyl siding of the North Wall and other materials falling onto the deck. Trial Tr. Vol. I 243:5-11 (Cuzzillo Testimony).

### C. Conclusions of Law

**a.** There are eight elements to proving equitable subrogation: "(1) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (2) the claimed loss was one for which the insurer was *not* primarily liable; (3) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (4) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (5) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (6) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (7) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (8) the insurer's damages are in a liquidated sum, generally the amount paid to the insured." *Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc.*, 238 Cal.App.4th 468, 483 n.3 (2015), quoting *Interstate Fire & Casualty Ins. Co. v. Cleveland Wrecking Co.*, 182 Cal.App.4th

23, 33-34 (2010).

**b.** "The elements of a cause of action for negligence are well established. They are (a) a *legal duty* to use due care; (b) a *breach* of that legal duty; and (c) the breach as the *proximate or legal cause* of the resulting injury." *Ladd v. Cnty. of San Mateo*, 12 Cal.4th 913, 917 (1996) (emphasis in original) (internal quotation marks and alterations omitted).

**c.** Because the WUI standards were not codified at the relevant time, they were not part of the applicable standard of care of a general contractor for the construction of the Willow Creek Apartments. UF 33; Trial Tr. Vol. I 84:24-85:6 (Hughes Testimony); Trial Tr. Vol. II 315:11-21 (Kelley Testimony); Trial Tr. Vol. II 355:1-8 (Cardle Testimony).

**d.** The design criteria of the Plans did not make reference to the WUI model code or its standards. Thus, WUI did not apply to the Apartment project. Trial Tr. Vol. II 355:1-23 (Cardle Testimony)

**e.** The Willow Creek Apartments were a Type V non-rated construction project. Type V offers the most flexibility in material selection. The buildings were separated from each other, and thus fire resistive construction requirements, such as one hour construction, were not required. Trial Tr. Vol. II 250:14-354:24 (Cardle Testimony).

**f.** The North Wall of the Apartment F deck was "bad news from a fire safety point of view" because it was made of three combustible components, vinyl siding, moisture barrier, and oriented strand board. Trial Tr. Vol. I 175:1-176:5 (Babrauskas Testimony). Philadelphia did not bring a claim based on the installation of the vinyl siding.

**g.** The tenant in Apartment F saw the 2013 fire, but did not try to extinguish it, and did not call the authorities. Pelton Depo II 12:18-25; Trial Tr. Vol. I 132:11-17 (Babrauskas Testimony).

**h.** The Green Deck was not a substantial factor in the spread of the fire. It did not increase the fire damage because the fire spread directly from the cardboard box to the combustible vinyl siding. In this regard, the burning-brand test introduced by videotape through Dr. Babrauskas was unconvincing because it did not attempt to mimic the conditions on the day of the fire. As Dr. Cuzzillo highlighted, the cardboard box at issue in this fire had a much lower mass than the burning-brand and so would not be able to heat the Green Deck as much as the burning-brand did in the video. Trial Tr. Vol. I 247:11-23 (Cuzzillo Testimony). Further, as Dr. Cuzzillo noted, the test used a simulated 12 mile-an-hour wind which increased the horizontal flame spread. *Id.* 245:23-247:9. This wind did not reflect the conditions of the fire in this case because, with only one open wall, it was not possible to have a steady wind across the deck of Apartment F. *Id.* Dr. Cuzzillo's testimony and opinion regarding the spread of the fire was more persuasive in light of the evidence.

**i.** The primary causes for the spread of the fire were the highly combustible vinyl siding of the North Wall and the failure of the Apartment F tenant to prevent or control the fire.

**j.** Because the Green Deck did not cause the fire damage, DANCO's installation of the Green Deck was not the proximate cause of Philadelphia's injury. That DANCO failed to send a written request for information to the architect or structural engineer, to obtain approval for the Green Deck from the County, or to submit change orders as required by the contract, is immaterial because of the lack of causation. Philadelphia cannot make out a claim for negligence against DANCO.

**k.** Because Philadelphia cannot make out a claim for negligence and cannot demonstrate that DANCO's installation of the Green Deck caused its damages, it has failed to meet elements (1), (6) and (7) of its equitable subrogation claim.

**l.** Philadelphia is not entitled to equitable subrogation.

## CONCLUSION

In light of the findings of fact and conclusions of law, I find in favor of defendant DANCO and against plaintiff Philadelphia, and will enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: June 27, 2017

William H. Orrick
United States District Judge